# Raoul Zaltzberg, Esq.

| | | |
|---|---|---|
| Zaltzberg Law | *Attorney at Law* | (212) 609-1344 |
| 14 Wall Street, 20th Floor | | (212) 609-1345 |
| New York, New York 10005 | www.zaltzberglaw.com | Raoul@ZaltzbergLaw.com |

_____

April 4, 2023

**BY ECF & EMAIIL**

Hon. John P. Cronan
US District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10078

Re: *United States v. Daniel Peralta*
22 Cr. 150 (JPC)

Dear Judge Cronan:

This letter is respectfully submitted in connection with the sentencing of Daniel Peralta, which is currently scheduled for April 18, 2023, and in support of a below guidelines sentence. Such a sentence is warranted based on Daniel's remorse and acceptance of responsibility for what he has done. From a young age, Daniel has faced obstacles in his life that caused him to fall of the path of a law-abiding citizen, though he doesn't offer this as an excuse, merely an explanation. Daniel takes full responsibility for his actions, treating this experience and the consequences that follow as a life lesson.

## Preliminary Statement

Daniel Peralta stands before the Court as a twenty-one-year-old, who has readily and wholeheartedly accepted responsibility for his participation in conspiring to possess and distribute fentanyl. His actions were thoughtless as to his victims, unacceptable, and deserving of consequences. However, a deeper look into the relevant factors of this case allows for some leniency for Daniel. We submit that a sentence less than recommended by the guidelines is, under Daniel's particular circumstances, sufficient to serve the purposes of sentencing.

Daniel is deeply remorseful for his actions. While Daniel offers no excuses for what he did, he does want the Court to understand that at the time, he was blinded by financial need

therefore lacking in good moral judgement. Daniel realizes that he chose the wrong path, made an awful mistake and most importantly, that his crime is not victimless. He acknowledges the negative effects that stem from the drugs which he was putting on the streets and is ashamed of his actions. As he states in his letter to the Court, "Instead of hurting people by selling drugs, there are other ways to make money in the community, as in getting a job[1]." Daniel is not proud of what has transpired and prays for the opportunity to make amends to the people he hurt, "What I am trying to say, Your Honor, is that I understand I need to pay for my crimes. But I am also hoping you will see I was doing good out there now, and see that I was not getting into trouble, see that I haven't been in trouble in here either, see that I am working on my GED, see that I am someone who wants to do better and just needs a second chance[2]".

This Court's "overarching statutory mandate" is to impose the minimum sentence sufficient to serve the purposes of sentencing. *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007). We write to assist and inform the Court pursuant to that mandate. We urge the Court to consider Daniel's young age, his desire to do better and the growth he showed while on supervised release as reasons for a second chance while fashioning the appropriate sentence in this matter.

## **Who is Daniel Peralta?**

Daniel Peralta was born on June 4, 2001, in the Bronx, NY. He is the older twin and the first of three boys born to Michael Peralta and Tameka Rodriguez.[3] Though Daniel was born into a family with both a mother and a father, this didn't last long as his father was later deported. Although Daniel has fond memories of his parents there was also a significant number of domestic disputes between them while he was a child. Daniels father was an alcoholic, which only further instigated fights between him and Daniel's mother. Daniel was more than a mere bystander to these disputes. For instance, at one point his father threatened to stab his mother and held a knife to her throat. At only seven years old during this fight, Daniel's mother pleaded for him to grab and bat and hit his father; Daniel couldn't and ran away traumatized. He believes his father was

---

[1] See Exhibit 1: Letter to Court from Daniel Peralta
[2] *Id.*
[3] We acknowledge that the Daniel's twin brother is a co-defendant in the present case.

deported due to this assault. His Father was deported back to the Dominican Republic where he still resides.

After his father was deported, Daniel's mother struggled to keep up with the financial needs of the family. She was attempting to get a college education and work to support the family at the same time, but her income wasn't sufficient. Their financial struggles later led to them being evicted from their home and forced them into a shelter. They would bounce between shelters and their grandmother's home. The instability in housing was tough to say the least. Daniel spent his childhood never really knowing where to call home, as it was constantly changing.

Growing up without a father figure, Daniel never had a role model to look up to. His mother had children with other men who would be present in their home during the relationships. Unfortunately for Daniel these men where not the role model he was looking for. While living in their home, the fathers of his younger siblings did not contribute financially to the family and one of them sold and used marijuana within their home. This man's actions went beyond just selling and using marijuana, he eventually used Daniel to help carry drugs for him. It wasn't long after that, that Daniel inevitable started using himself at only 12 years old. This was not only a severe disappointment to his mother but the beginning of a slippery slope for Daniel.

Daniel spent most of his young life fighting the effects of drug use and addiction. Around the young age of 14, Daniel was admitted to and completed a 30-day substance use rehabilitation. Around the same time Daniel was starting high school. He struggled in school due to learning disabilities relating to speech and reading. The disabilities required him to repeat a few years throughout his education. Daniel ultimately chose to drop out of high school at 17 years old to financially support his pregnant girlfriend. His focus, rather than on himself and his own education, was providing for his child.

Since then, Daniel has continued to work towards his GED while still working. He was working as a full-time drivers helper during the summer of 2021 and as a food packer prior to that. In the summer of 2022, he was working for a Summer Youth Employment Program (SYEP) as a janitor. Prior to being arrested he was no longer employed. However, while out on supervised

release and wearing an ankle monitor, Daniel was still able to ultimately secure two jobs, at different times. He successfully completed both and found pride in his ability to obtain employment and provide for himself and his family.

In addition, Daniel has not only been working to provide for himself and those he cares about but has been working on his own battle with mental health and drug use. While he was out on bail Daniel was participating in co-occurring substance use and mental health treatment in the Bronx. His initial focus was the marijuana use and addiction while being treated. He later learned that he was struggling with depression as well and went to focus on that in addition to the drug use. Daniel participated in weekly group and individual counseling in an attempt to better himself and beat his addiction. Looking forward, Daniel would like to continue treatment of a similar kind in hopes of continuing to better himself.

## WHO DANIEL PERALTA CAN BE

Daniel Peralta, in the time I have got to know him, is extremely shy. However, he is also thoughtful, kind and caring. He is a father of two, which has brought him endless joy but has also been quite difficult, given his age and upbringing. But Daniel very badly wants to be the type of father his children will be proud of. He now understands what is important to him, "In the time this case was going, I was able to get jobs, I was able to pick up my kids and younger brother from school as a parent and a brother and support them. I never thought or I guess realized, how good it felt to do those things[4]." Moreover, he knows that being a criminal is not the life he wants to live any longer, "I do not want to be a drug dealer or a person who commits crimes anymore. I want to be a role model to my children and a role model to the community and a role model to my younger siblings.[5]" As Margaret Reyes, his girlfriend wrote in her letter, Daniel wants to change and she has seen the changes, "He is making positive changes while out like going to his program and fatherhood academy[6]." In reading the letters from his younger brothers, it is very clear how much Daniel looks after them and how much he encourages them to do better than he did. As Mr. Reyes, Margaret's little brother says, "[he] always giving me advice to stay

---

[4] See Exhibit 1: Letter to Court from Daniel Peralta
[5] *Id.*
[6] See Exhibit 2: Letter for Daniel Peralta

in school and finish high school since he never did[7]." It is clear from the letters that Daniel is loved and supported. It is our hope that his behavior while on supervised release, specifically, his willingness to work, to comply and to be there for his family, all show the Court what he is capable of.

## The Crime

Daniel Peralta entered a plea of guilty to the offense of conspiring to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C).

## Sentencing

It is well established that the United States Sentencing Guidelines ('the guidelines") are now advisory rather than mandatory.  See, *United States v. Booker and United States v. Fanfan,* 543 U.S. 220, 125 S.Ct. 738 (2005).  As the Court has explained, in determining what sentence to impose a judge must consider all of the factors set forth in 18 U.S.C. §3553(a); the guidelines are merely one factor to be considered together with all of the other relevant sentencing factors outlined in 18 U.S.C. §3553(a).  *Booker, supra*.  The Supreme Court has made it clear that the district courts must make an "individualized assessment" based upon all the 18 U.S.C. §3553(a) factors.  *Gall v. United States*, 128 S.Ct. 586 (2007).

In imposing sentence, this Court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature of and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and

---

[7] *Id.*

>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the advisory Guidelines range;
> (5) any pertinent policy statements issued by the Sentencing Commission;
> (6) the need to avoid unwarranted sentence disparities; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* After considering all of those factors, this Court must "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2)." *Id.* (Emphasis added).

### a) The Sentencing Guidelines

The parties have entered into a Plea Agreement that calculates the advisory sentencing guidelines for his plea to conspiring to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C).:

| | |
|---|---|
| Base Offense Level | 24 |
| Acceptance of Responsibility | -3 |
| **Total** | **21** |

According to the sentencing table in the USSG Chapter 5, Part A, Daniel has zero criminal history points. That places him in criminal history category of I. Based upon the calculations set forth above, Mr. Peralta's Guidelines range is 37 to 46 months' imprisonment and the applicable fine range is $15,000 to $1,000,000.

The Guidelines, however, are no longer binding on the Court, but are considered a starting point. As such, the Court has full discretion to sentence Daniel Peralta in accordance with the

explicit goals set forth in *Kimbrough's* "mandate" to impose the minimum sentence sufficient to serve the purposes of sentencing. *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007).

The United States Sentencing Commission (hereinafter USSC) defines departures as "authorized adjustments to a sentencing range within the guideline system." *United States v. McBride*, 434 F.3d 470 (6th Cir. 2006); *United States v. Andrews*, 447 F.3d 806 (10th Cir. 2006) 16 ("while the guidelines discourage consideration of certain factors for downward departures, Booker frees courts to consider those factors as part of their analysis under § 3553(a)"); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) (collecting cases) (while "[p]olicy statements issued by the Sentencing Commission are, of course, pertinent to sentencing determinations even under the now-advisory guidelines, . . . such policy statements normally are not decisive as to what may constitute a permissible ground for a variant sentence in a given case"). A "variance" outside the guideline range provided for in the Guidelines Manual should occur after consideration of all relevant departure provisions. *United States v. Gall*, 128 S.Ct. at 596. Courts have held that variances 139 are not subject to the guideline analysis for departures. *See e.g., United States v. Fumo,* 655 F.3d 288, 317 (3d Cir. 2011), as amended (Sept. 15, 2011). In a report done by the USSC, for the fiscal year of 2021[8], in the Second Circuit only 27.1% of the sentences imposed were within the guidelines while nearly three-fourths (72.8%) fell below the guidelines. More specifically, in the Southern District, over 80% of the sentences imposed fell below the guidelines. Thus, in the Southern District of New York, a sentence below the guideline range is an overwhelming norm, and not the exception.

**b)** <u>**The Factors of 18 U.S.C. §3553(a)**</u>

While a court is required to consider the Sentencing Guidelines in sentencing a defendant, it is not bound by them. *United States v. Booker,* 543 U.S. 220, 264 (2005); see also *Rita v. United States*, 551 U.S. 338, 351 (2007) (a district court should begin sentencing proceedings by correctly calculating the applicable Guideline range); *Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Sentencing a criminal defendant "requires a court to

---

[8] See Exhibit 4: U.S. Sentencing Commission, 2021 Datafile, USSCFY21.

consider with great care and sensitivity, a large complex of facts, and factors." *United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012).

Thus, while a court still must determine the appropriate Guidelines range as a starting point - not always an easy task, as this case demonstrates - the sentencing court "must consider all the factors set forth in [18 U.S.C.] $3553(a) to guide its discretion at sentencing," *Peugh v. United States*, 569 U.S. 530, 536 (2013). Indeed, after determining the Guidelines range, the sentencing court must "then make an independent sentencing determination, taking into account the nature and circumstances of the offense and the history and characteristics of the defendant.' and all the statutory factors." *United States v. Singh*, 877 F.3d 107, 116 (2d Cir. 2017) (citing *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008)).

The Supreme Court has also instructed sentencing courts that the Guidelines are not only just advisory, but that they are not even to be presumed reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (*The Guidelines are not only *not mandatory* on sentencing courts, they are also not to be presumed reasonable.") (emphasis added); see *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (courts can vary from the Guidelines based solely on policy considerations, including disagreements with the Guidelines). The Second Circuit has similarly held that, "[e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant." *United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010). Therefore, sentencing is far from a mechanical application of the Guidelines. Rather, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometime mitigate, sometimes magnify, the crime and the punishment to ensue.' *Rita*, 551 U.S. at 364 (Stevens, J. and Ginsburg, J. concurring) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

In *United States v. Gupta*, for instance, although the Guidelines Range was 78-97 months, Judge Rakoff imposed a 24 month "non-guidelines" sentence, explaining, "[the notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding up of a small set of numbers artificially assigned to a few arbitrarily selected variables wars with

common sense." *Gupta*, 904 F. Supp. 2d at 350.

The Guidelines range represents the Sentencing Commission's considered opinion about what the sentence should be in an "ordinary" case, and therefore serves as the district court's "starting point" in selecting a sentence. *Kimbrough v. United States*, 552 U.S. 85, 108, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007). The §3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *see Kimbrough*, 552 U.S. at 108-10.

1) <u>**Nature of the Offense and Character of the defendant**</u>:

There is no dispute that the present crime is a serious crime. But this has been a reality check for Daniel and has given him time to be able to clear his head, think about his circumstances and for the first time, reflect on his life and the direction it has taken. Daniel feels that he has disappointed his family and is truly sorry for what he has done. Daniel's goal is to get through this situation with a new outlook on life while staying out of trouble. He is ready to work hard to provide for his family, pay the consequences of his actions, focus on his mental health and work towards a structured career.

2) <u>**The need for the Sentence imposed to:**</u>

A) **Reflect the seriousness of the offense, to promote respect for the law and to provide for punishment for the offense:**

Promotion of respect for the law does not merely derive from society's readiness to dole out harsh punishment or seek retribution for crimes against society. Indeed, the power to impart individualized sentencing that demonstrates leniency for law-abiding citizens who lose their way and deter from their previous law-abiding ways may in fact be the most powerful of the Court's tools in the promotion of respect for the law and justice.

**3)** **<u>The kind of sentences available</u>**:

This Court is entirely within its authority to sentence Daniel Peralta to a sentence below recommended guidelines. There is no minimum required jail sentence, and the law provides the Court with a realm of sentencing options other than incarceration, including probation, home detention, community service and any other sentence the Court seeks to fashion. Any or all of these forms of punishment are more than sufficient remedies in this manner.

**4)** **<u>The sentencing guidelines and policy statements and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct:</u>**

Imposition of a below guidelines sentence and supervision in this case will not create any sentencing disparities, either nationally or locally. Further, such a sentence for this defendant would not be inconsistent with the sentences imposed on other defendants prosecuted in this investigation.

<u>A Reasonable Sentence</u>

In a post *Booker* environment, where the sentencing guidelines are no longer mandatory, the decision on what sentence to impose is often the most difficult question to answer. *Booker* requires the district court to tailor sentences to reflect an application of the 18 U.S.C. §3553(a) factors, with the expectation that post-*Booker* sentences will achieve more "individualized justice." *see, United States v. Crosby,* 397 F.3d 103, 114 (2nd Cir. 2005).

It is respectfully submitted that a long prison sentence is not necessary to achieve the goals of specific or general deterrence in this case. Sentencing Mr. Peralta to a below guidelines sentence will achieve the right level of justice.

Indeed, given Mr. Peralta's current age of 21, statistically speaking, his rate of offending decreases and continues to do so significantly[9]. The prevalence of offending tends to increase from late childhood, peak in the teenage years (from 15 to 19) and then decline in the early 20s. (see Figure 1). Given his age, his job and his family, Mr. Peralta has every reason to live the rest of his life as a law-abiding citizen.



**Figure 1: An example of an age-crime curve**

### Conclusion

In light of the above, it is respectfully requested that under the compelling facts of this case, the Court finds that a below guidelines sentence is justified. Daniel Peralta is a young man with a family who loves and needs him. Given his age, his remorse and his desire to do better, it is submitted that a below guidelines sentence would constitute a reasonable one. For the reasons stated herein, Mr. Peralta respectfully asks the Court to impose a sentence of 18 months. We would further ask the Court to consider, given how well Daniel did while on home confinement, that he be able to serve his time under the same conditions, including an ankle monitor, at home. In the alternative, we believe a sentence of 18 months is appropriate, but not greater than necessary in this case.

---

[9] See Loeber, Rolf, and Rebecca Stallings, "Modeling the Impact of Interventions on Local Indicators of Offending, Victimization, and Incarceration," in Young Homicide Offenders and Victims: Risk Factors, Prediction, and Prevention from Childhood, eds. Rolf Loeber and David P. Farrington, New York: Springer, 2011: 137-152

On behalf of Daniel Peralta, thank you for your consideration.

Dated: New York, New York
April 4, 2023

Respectfully submitted,

_____*Raoul Zaltzberg*_____
Raoul Zaltzberg, Esq.